CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 20 2011

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JAMIE PAUL DESPER, | CASE NO. 7:10CV00473 |
| Plaintiff, | |
| | MEMORANDUM OPINION |
| vs. | |
| SUPERINTENDENT JACK LEE, ET AL., | By: Glen E. Conrad |
| | Chief United States District Judge |
| Defendants. | |

Jamie Paul Desper, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA), with jurisdiction vested pursuant to 28 U.S.C. § 1331 and § 1343. Desper alleges that jail officials interfered with his ability to practice his religious beliefs by forcing him to watch television programming of another religious denomination and threatening him with lock down if he did not perform assigned cleaning duties on his Sabbath. He also complains that jail officials denied him legal materials and appropriate food service. Defendants have filed motions for summary judgment, arguing that Desper's claims are unexhausted under 42 U.S.C. § 1997e(a) or without merit. Desper has responded, making the motions ripe for disposition. Upon consideration of the record, the court concludes that the defendants are entitled to summary judgment as to Desper's religion rights claims and that Desper's remaining claims must be summarily dismissed.

I. Plaintiff's Allegations and Claims

In his second amended complaint, Desper characterizes himself as an adherent of the Seventh-Day Adventist (SDA) religious faith. As an SDA, he believes that Saturday is the Sabbath, when believers are to refrain from work and business to rest and worship God. While

he was incarcerated at the Middle River Regional Jail (MRRJ) in 2010, Desper found that certain jail policies were not consistent with his SDA beliefs. Jail officials required inmates to clean their own cells daily and to rotate daily cell block cleaning duties. Desper told officers that cleaning on his Sabbath day violated his SDA beliefs and asked that he not be required to clean on that day. Officers told him that if he refused to clean on his assigned cleaning day, the entire cell block of inmates would be "locked down" because of him. Desper worried that other inmates would be angry and threaten his safety if his refusal to clean on his Sabbath day caused them to be locked down.

Desper also disagreed with the jail's policy directing that on Sunday mornings, an officer would set the cell block television to the church channel that played prerecorded religious services which Desper describes as "Amish Mennonite."[1] According to Desper, this programming "include[d] views that he [did] not find appropriate or in line with his own beliefs."[2] Officials threatened inmates with punishment if they changed the channel or turned the television off. Desper told officers that his "rights were being violated" by this practice.

Desper complains that inmates at MMRJ could not go to the law library to do legal research; policy required them to file requests with law library staff for copies of specific code sections or court decisions, and the jail did not provide a jailhouse attorney to help inmates with legal matters. In June 2010, Desper sent requests to the jail law library staff, asking for specific legal materials he wanted to see, related to his state criminal proceedings and his civil rights. He

---

[1] Defendants' affidavits and the jail operating procedure indicate that the television programming provided on Sunday mornings for inmates was "non-denominational." Desper does not point to any particular aspect of the program that caused him to believe it was Amish Mennonite.

[2] In his response to defendants' motions, Desper also alleges that officials refused his inmate request to implement an SDA religious service for inmates. It is clear that he did not complete the grievance process as to this claim before filing the lawsuit, as required pursuant to 42 U.S.C. § 1997e(a), and he does not ask to amend the action to bring this additional claim. Accordingly, the claim is not properly before the court and will not be addressed here.

also asked for legal information pertaining to another inmate's case. Staff responded by asking how the requested items related to Desper's own legal matters, since he was not allowed to assist other inmates with legal matters. He asserts that because he had inadequate access to legal materials at MMRJ, he was unable to mount an "adequate defense in his criminal trial [and] was sentenced to 80 years with 60 years suspended."

Desper also found food service at MMRJ to be lacking. Jail staff served meals cold and refused to allow inmates to heat them in the unit microwaves; served meat that was not cooked thoroughly; served outdated or rotten salad or fruit; served only two meals per day on the weekends without sufficiently increasing the portion sizes so as to provide adequate nutrition; and on one occasion, served food with maggots in it.

Desper advised MMRJ officials verbally and through inmate request forms and grievances that he was an SDA and that it violated his beliefs to clean on Saturday and to be forced to watch non-SDA programming on television. Unsatisfied with officials' grievance responses, Desper asked for appeal forms, but did not receive them. Desper then filed this civil rights action. In his second amended complaint, filed on December 10, 2010, he asserts the following numbered claims: (1) Defendants "exercised deliberate indifference to [his] complaints and concerns about his religious beliefs and practices," in violation of Desper's rights under RLUIPA, the Free Exercise and Establishment Clauses;[3] (2) Lilly and Nicholson interfered with Desper's right to access the courts by denying his requests for legal information; (3) defendants were deliberately indifferent to Desper's "health concerns for the kind of food the

---

[3] In the statement of his religious rights claim, Desper mentions only the Sunday morning television programming. The defendants interpret the claim as also challenging the cleaning policy.

3

jail serves." Desper seeks monetary damages and injunctive relief to correct these problems for other MMRJ inmates.[4]

## II. Discussion

An award of summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). For a party's evidence to raise a genuine issue of material fact sufficient to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Then, the burden shifts to the nonmoving party to show that such an issue does, in fact, exist. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). To forestall summary judgment, the nonmoving party must set forth more than a "mere ... scintilla of evidence." Anderson, 477 U.S. at 252. At the very least, the nonmoving party cannot "create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (citing Barwick v. Celotex Corp., 736 F.2d 946, 963 (4th Cir. 1984)).

---

[4] Desper notified the court in February 2011 that he had been transferred to Mecklenburg Correctional Center, a prison facility operated by the Virginia Department of Corrections (VDOC).

4

A. Preliminary Matters

As an initial matter, Desper cannot litigate his § 1983 claims on behalf of other inmates at MMRJ whom he believes have been, or may be, harmed by the challenged policies. See Hummer v. Dalton, 657 F.2d 621, 625-626 (4th Cir. 1981) (holding a prisoner proceeding pro se may not serve as a "knight errant" for other inmates, but may only seek to enforce his own rights); Inmates v. Owens, 561 F.2d 560 (4th Cir. 1977) (to state civil rights claim, plaintiff must allege facts demonstrating that he himself has sustained, or will sustain, deprivation of right, privilege or immunity secured by the constitution or federal law). See also Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 166 (1972) (a litigant "has standing to seek redress for injuries done to him, but may not seek redress for injuries done to others"). Accordingly, to the extent that Desper seeks to vindicate the rights of other inmates, his complaint must be dismissed.

Along these same lines, because Desper has been transferred and is no longer subject to the jail policies that he challenges here, his claims for injunctive relief must be dismissed as moot.[5] Rendelman v. Rouse, 569 F.3d 182, 186-87 (4th Cir. 2009) (finding transfer rendered moot a prisoner's claims for injunctive and declaratory relief, but not his claims for monetary damages). Therefore, Desper's claims for injunctive relief must be dismissed.

---

[5] Desper argues that his claims for injunctive relief are not moot, because he might have problems exercising his religious beliefs at the institution where he is now confined. The court finds no merit to this argument. The defendants in this lawsuit, who are MRRJ officials, have no authority over conditions or policies at his current prison facility, which is operated by the VDOC. Rendelman, 569 F.3d at 186-87 (rejecting inmate's claim that transfer from state to federal prison regarding religious exercise was not "capable of repetition yet evading review" so as to prevent plaintiff's claims for injunctive relief under RLUIPA from being rendered moot by transfer). Moreover, Desper may not avoid dismissal of his injunctive relief claims against the MRRJ officials on the speculative chance that he might be returned to MRRJ at some time in the future. Incumaa v. Ozmint, 507 F.3d 281, 289 (4th Cir. 2007).

5

B. Religious Rights Claims

1. RLUIPA Claims

Section § 2000cc-1(a) of RLUIPA prohibits state prison officials from substantially burdening an inmate's exercise of his sincerely held religious beliefs except by the least restrictive means necessary to further a compelling governmental interest. The statute does not, however, authorize claims for money damages against prison personnel for actions taken in their official capacities. Madison v. Virginia, 474 F.3d 118, 133 (4th Cir. 2006). Moreover, the United States Court of Appeals for the Fourth Circuit has ruled that RLUIPA does not authorize claims for money damages against an official who is sued in his individual capacity in reliance on the Spending Clause facet of the statute.[6] Rendelman, 569 F.3d at 189. Consequently, the court concludes that defendants are entitled to summary judgment as to Desper's RLUIPA claims for monetary relief. See also Jabbar v. Burnett, No. 1:09cv246 (TSE/TCB), 2010 WL 3671155, *9 (E.D. Va. 2010) (barring monetary claims under RLUIPA against jail personnel acting in official or individual capacity); Muwwakkil v. Johnson, No. 7:09CV00318, 2010 WL 3585983, *6 n. 6 (W.D. Va. 2010) (granting summary judgment as to RLUIPA claims for monetary damages).

2. Free Exercise Claims

The First Amendment protects an individual's right to the free exercise of religion. U.S. Const. amend I. To state a claim that prison officials or regulations have violated his right to free exercise, plaintiff must first prove that he holds a sincere religious belief, as opposed to a secular

---

[6] Neither the Fourth Circuit nor the United States Supreme Court has yet addressed the question of whether a RLUIPA claim could arise under the Commerce Clause portion of the statute. See Rendelman, 569 F.3d at 189. Desper, however, fails to allege any facts suggesting that his complaints against MRRJ officials could qualify as actionable claims under the Commerce Clause section of RLUIPA.

6

Case 7:10-cv-00473-GEC-RSB   Document 73   Filed 10/20/11   Page 6 of 17   Pageid#: 484

preference, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). According to the Supreme Court,

> a "substantial burden" is one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs," Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 718 (1981), or one that forces a person to "choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand," Sherbert v. Verner, 374 U.S. 398, 404 (1963).

Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006). Plaintiff must prove not only that defendants placed a substantial burden on his ability to exercise his religious practice, but also that they knowingly did so; inadvertent or negligent interference with an inmate's religious practice does not rise to constitutional proportions. Id. at 194.

In deference to the expertise of prison officials in managing the difficult challenges of prison administration, even when a prison policy substantially burdens an inmate's ability to practice his religious beliefs, the policy withstands a First Amendment challenge so long as it is rationally related to furtherance of a legitimate governmental interest. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987); Turner v. Safley, 482 U.S. 78, 89-91 (1987). In Turner, the Supreme Court identified four factors relevant to determining the reasonableness of a challenged prison regulation: (1) whether a "valid, rational connection" exists between the regulation and a legitimate and neutral governmental interest; (b) whether alternative means of exercising the asserted constitutional right remain open to inmates; (c) whether accommodating the asserted right will have an adverse impact on staff, inmates, and prison resources; and (d) whether alternative measures are readily available to address prison concerns while also accommodating the inmate's religious practices. 482 U.S. at 89-91.

Applying these principles here, the court concludes that the defendants are entitled to summary judgment as to Desper's religious rights claims under the First Amendment. Desper's

7

sparse factual allegations do not indicate that he, at any time, explained to the defendants in any detail the specific tenets of his SDA religious beliefs or how any of the challenged jail policies substantially burdened those beliefs. In his inmate complaints and grievances, he simply stated that as an SDA, he "observ[ed] Saturday as the Lord's day" and complained that officers "threaten[ed] to lock [him] down when [he did] not clean on [his] religious day" and "forced [him] to watch" the Sunday morning religious television program.

Defendants offer uncontradicted evidence that inmates' cleaning duties are necessary in order for the jail to provide a safe, clean, and pest-free environment for inmates in compliance with applicable health and safety standards. Under the cleaning schedule, Desper would only occasionally have pulled the cell block cleaning duty on his Sabbath, when his assigned day fell, by coincidence, on Saturday. He does not allege facts indicating that the defendants were clearly notified how these simple, periodic cleaning duties substantially burdened his religious practice.

Defendants also offer undisputed evidence that jail policy did not require inmates to watch the Sunday morning religious programming, that officers merely turned it on at certain times and made headphones available for inmates who wanted to hear the sound track of the program.[7] Desper does not allege facts indicating that the broadcast of the religious program in the cell block hampered him in any way from participating in other activities during that time. He also does not point to any particular aspect of the programming that was offensive or contrary to his own beliefs. Indeed, he does not explain how he learned of the views expressed on the program unless he voluntarily donned headphones to listen to those views.

Moreover, Desper does not complain that the challenged MMRJ policies interfered with his ability to worship as he saw fit on his Saturday Sabbath. In short, he simply does not forecast

---

[7] The MRRJ Inmate Handbook states that "church services will be broadcast over the television on each pod every Sunday at certain times," that these services are "nondenominational," and that "[i]nmates wishing to watch this service may do so." (ECF No. 40-1 at 7.)

8

evidence by which he could prove that defendants were on notice that the challenged policies substantially burdened his SDA religious practices. He thus fails to demonstrate that their challenged actions constituted anything more than inadvertent or negligent interference with his exercise of his religious beliefs, and as such, fails to state a constitutional claim.[8] Lovelace, 472 F.3d at 187 and 194.

Furthermore, defendants have demonstrated that the policies Desper challenges are reasonable in light of the four Turner factors. 482 U.S. at 89-91. Keeping the prison environment clean furthers the jail's clear and neutral interests in preventing insect or rodent infestations as well as eliminating health risks for inmates and staff. Defendants also offer evidence that keeping a uniform cleaning rotation among inmates in the cell block reduces complications for the shift sergeants managing the rotation, who must already deal with scheduling difficulties caused by inmate attrition in the local jail setting. The Sunday morning television policy furthers a legitimate governmental interest as well. Making the religious programming available to inmates on Sunday mornings, via headphones, addresses the jail's constitutional responsibility to provide reasonable accommodation for the beliefs of inmates who want to watch religious programming on Sunday morning, while leaving other inmates, like Desper, the free choice to watch and listen to the program or to ignore it. Changing the cleaning and television policies would adversely impact other inmates and staff, by complicating the

---

[8] As an alternative ground for summary judgment, defendants are entitled to qualified immunity. A government official receives qualified immunity against claims for damages to the extent that his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). He forfeits such immunity only if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 638 (1987). Desper has not demonstrated that he provided defendants with sufficient details about his religious practices so as to make them aware that the challenged policies violated his right to free exercise of his beliefs in the prison context.

9

cleaning schedule and eliminating the religious television option that some inmates may desire. As stated, Desper fails to demonstrate that he has no other means of exercising his own SDA religious beliefs, such as worshipping on Saturday, studying, and praying. Finally, he fails to demonstrate any less restrictive alternative policy that would also accomplish the same prison objectives.

Accordingly, the court concludes that Desper fails to state facts demonstrating that defendants knowingly took action substantially burdening his religious practice, and defendants are entitled to summary judgment as to his § 1983 claims under the Free Exercise Clause.

3. Establishment Clause Claim

Desper also asserts that the religious television programming policy violated his rights under the Establishment Clause, because he was allegedly "forced" to watch religious ideas with which he did not agree. The court finds no constitutional claim here.

> The principle that government may accommodate the free exercise of religion does not supersede the fundamental limitations imposed by the Establishment Clause. It is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which "establishes a [state] religion or religious faith, or tends to do so."

Lee v. Weisman, 505 U.S. 577, 587 (1992) (quoting Lynch v. Donnelly, 465 U.S. 668, 678 (1984)). In Lee, the Supreme Court ruled that including prayers by a rabbi during public middle school graduation ceremonies violated students' rights under the Establishment Clause because the prayer, presented by the school's chosen cleric, was "an overt religious exercise in [an] environment where . . . subtle coercive pressures exist and where the [litigant] had no real alternative which would have allowed her to avoid the fact or appearance of participation." Id. at 588. On the other hand, a prison's policy of broadcasting Christian religious programs as one of several channel choices on the prison's television network did not violate the Establishment

Clause. See Henderson v. Frank, 190 Fed. App'x 507, 509-10 (7th Cir. 2006). Inmates failed to demonstrate any adverse action taken against them for failing to watch the religion programming, and the prison provided other opportunities for exercise of religious beliefs, including non-religious programming. Id. The Establishment "Clause does not require a prison to provide identical worship opportunities for every religious sect or group," but need only provide all prisoners with "reasonable opportunities" to exercise their religious freedom. Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972) (per curiam).

Desper's allegations are not sufficient to support an Establishment Clause claim concerning the MRRJ Sunday morning television programming. Desper offers no evidence in support of his assertion that he was forced or required to watch and listen to the religious programs, or that he faced any sort of punishment or sanction if he failed to do so. The requirement that inmates could not change the television channel on Sunday morning does not equate with a mandate that they actually pay any attention whatsoever to the program being broadcast. Desper also fails to allege facts demonstrating that he had no reasonable opportunities at MRRJ to exercise his own religious beliefs. Finding no material fact in dispute, the court concludes that the defendants are entitled to summary judgment as a matter of law as to Desper's Establishment Clause claim.

C. Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides, among other things, that a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies. Nussle v. Porter, 534 U.S. 516, 524 (2002). To comply with § 1997e(a), an inmate must follow each step of the established administrative procedure that the prison provides to prisoners and meet all deadlines within that procedure before filing his § 1983

11

action. See Woodford v. Ngo, 548 U.S. 81, 90-94 (2006). "A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

Inmates arriving at MRRJ are oriented to the jail's inmate grievance procedure and receive a copy of the Inmate Handbook, which includes a detailed description of the grievance procedures. An inmate who wants to file a grievance must first use proper means to resolve the issue informally. If this first step is unsuccessful, the inmate may file a grievance, to which officials must normally respond in writing within ten days. An inmate who disagrees with the grievance response has 24 hours from receipt of that response to appeal, using the appeal form provided. The appeal response is a final decision on the issue.

According to defendants' evidence, Desper's grievance file reflects that he filed inmate grievance #11754 on August 10, 2010, complaining that officers denied his requests for specific legal materials before that date, and inmate grievance #12622 on November 5, 2009, complaining that his food was not hot every meal and that he was supposed to receive double portions of food on Saturday and Sunday. He also presents evidence that he submitted inmate grievance #12164 on November 28, 2010, complaining about finding maggots in his food. After officers responded to these grievances, Desper had 24 hours to appeal, but did not do so.

Defendants argue that because Desper did not appeal the grievance responses, he failed to exhaust the available administrative remedies at MMRJ, as required under § 1997e(a), as to claims (2) and (3), concerning legal materials and food service.[9] Desper contends, however, that he could not appeal these grievance responses within the 24-hours allotted under the MMRJ procedures, because officers denied his requests for the necessary appeal forms. Taking these

---

[9] The defendants do not contend that Desper failed to exhaust administrative remedies as to Claim (1).

12

factual allegations in the light most favorable to Desper, the court finds a genuine issue of material fact as to whether the appeal portion of the MMRJ remedies scheme was available to Desper. See Moore, 517 F.3d at 725. Thus, the court must deny defendants' motions for summary judgment under § 1997e(a) as to the claims raised in his grievances.

Defendants offer evidence that Desper's grievance file does not indicate that he pursued inmate grievances concerning the lack of a law library, lack of a legal assistant, denial of the right to assist other inmates with legal work, or denial of legal materials he requested after August 2010. The various "inmate requests" Desper claims to have submitted about these matters are not "grievances," the required first step inmates must take to exhaust administrative remedies under the MRRJ procedure. Desper offers no explanation for his failure to pursue grievances. Thus, to the extent Desper seeks to raise § 1983 claims on these matters in this lawsuit, such claims must be dismissed without prejudice, pursuant to § 1997e(a), for failure to exhaust administrative remedies before filing this action.

D. Claims to be Dismissed under 28 U.S.C. § 1915A(b)(1)

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1). To survive screening under § 1915A(b)(1), the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). While the court must construe factual allegations in the plaintiff's favor and treat them as true, the court need not treat the complaint's legal conclusions as true. Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217-18 (4th Cir. 1994); Custer v. Sweeney, 89 F.3d 1156, 1163 (4th Cir.

13

1996) (in Rule 12(b)(6) analysis, court need not accept as true plaintiff's "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations") (internal quotations and citations omitted). After a review of Desper's submissions, the court concludes that he fails to allege facts stating any plausible claim actionable under § 1983 regarding his requests for legal materials and his complaints about the food service.

1. Access to Courts Claims

Inmates have a constitutional right to reasonable access to the courts, but that right does not require prisons to allow inmates physical access to a law library or to receive unlimited copies of code sections or court decisions. See Lewis v. Casey, 518 U.S. 343, 351-53 (1996); Bounds v. Smith, 430 U.S. 817, 838 (1977). In order to plead a claim that defendants' past actions deprived plaintiff of access to the courts, plaintiff must identify, with specificity, a non-frivolous legal claim that defendants' actions prevented him from litigating. Christopher v. Harbury, 536 U.S. 403, 415 (2002); Lewis, 518 U.S. at 353 n. 3. "[V]ague and conclusory allegations of inconvenience or delay in his instigation or prosecution of legal actions" are not sufficient to satisfy this injury element of the claim. Godfrey v. Washington County, VA, Sheriff, No. 7:06-cv-00187, 2007 WL 2405728, at *13 (W.D. Va. 2007). "The fact that an inmate may not be able to litigate in exactly the manner he desires is not sufficient to demonstrate the actual injury element of an access to courts claim." Id. (quoting Lewis, 518 U.S. at 354).

In inmate grievance #11754, Desper complained that jail officials refused to provide him with a copy of Virginia Code 53.1-176.2 and a court decision from the United States Court of Appeals for the Third Circuit from 1981. His submissions also include complaints that MRRJ

14

mail policy prevented him from receiving a legal book that he requested[10] and that he was not allowed to use Black's Law Dictionary. Desper does not explain any specific respect in which lack of these materials adversely affected his ability to prepare his legal defense in the criminal proceedings or his submissions in this civil rights lawsuit. Instead, he makes bald conclusory statements that because his access to desired legal materials was limited, he had to hire an attorney and was unable to avoid a lengthy criminal sentence; these unsupported assertions need not be taken as true facts. The court will dismiss Claim (2) without prejudice, pursuant to § 1915A(b)(1), for failure to state a claim.

2. Food Service Claims

The Eighth Amendment protects prisoners from cruel and unusual living conditions.[11] See Rhodes v. Chapman, 452 U.S. 337 (1981). To prove a constitutional claim related to an unsafe jail condition, however, Desper must show that the defendant official acted with deliberate indifference–that he knew, subjectively, the condition presented a substantial risk of serious harm and nevertheless failed to take "reasonable measures" to alleviate it. Farmer v. Brennan, 511 U.S. 825, 835-37 (1994). Possible negligence by officials simply does not give rise to any constitutional claim actionable under § 1983. See, e.g., County of Sacramento v.

---

[10] Desper also alleges that MRRJ mail policy prevented him from receiving religious, educational materials that he requested. This issue is not clearly presented as part of his religious rights claim, and defendants did not respond to it as such. In any event, because he does not allege facts indicating any respect in which the lack of these materials substantially burdened his SDA religious practices, he fails to state a constitutional claim that defendants' enforcement of the mail policy represented a knowing violation of his free exercise rights. See Lovelace, 472 F.3d at 187 and 194.

[11] It is not clear from the allegations in the complaint whether Desper, at the time he complained about MRRJ food service, was a pretrial detainee or a convicted inmate serving a criminal sentence. Claims concerning confinement conditions imposed upon pretrial detainees are to be evaluated under the Due Process Clause, rather than under the Eighth Amendment, which applies to convicted inmates. See Bell v. Wolfish, 441 U.S. 520, 535-538 (1979). Due process proscribes punishment of a detainee before proper adjudication of guilt has been accomplished. Id. As a practical matter, however, the contours of pretrial detainees' rights under the Due Process Clause are coextensive with the Eighth Amendment protections applicable to convicted inmates. See, e.g., Hill v. Nicodemus, 979 F.2d 987, 991-92 (4th Cir. 1992) (medical needs).

Lewis, 523 U.S. 833, 849 (1998) ("[T]he Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold" of constitutional protections). Plaintiff must also show, objectively, that he suffered a serious injury from the unsafe condition. Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993).

Desper's allegations do not satisfy the elements of this Eighth Amendment standard. As stated, he complains about receiving cold meals, not getting double portions during weekends when the jail served only two meals per day, and receiving food with maggots in it on only one occasion.[12] Nothing in his complaint suggests, however, that he personally suffered any serious injury from these food service problems, or that jail officials knew that the size of the weekend portions or the temperature of the food served presented any significant risk of harm to anyone. Id. Thus, Desper's food service claims fail under both prongs of the applicable constitutional standard, and the court will summarily dismiss these claims without prejudice, pursuant to § 1915A(b)(1), for failure to state a claim.

### III

For the reasons stated, the court will grant defendants' motions for summary judgment as to Desper's religious rights claims and will summarily dismiss his remaining claims without prejudice, pursuant to §§ 1915A(b)(1) and 1997e(a). Plaintiff's pending motions to compel additional responses to his discovery requests will be denied, because he fails to demonstrate that such responses were necessary for preparation of his opposition to defendants' motions for

---

[12] In his grievance on this issue, Desper admitted that he never saw maggots on his own food tray. Furthermore, this allegation that kitchen workers failed to prevent insect tainted food from being served on one occasion implicates negligence, at the most, and not deliberate indifference as required to state a constitutional claim. Farmer, 511 U.S. at 835-37.

16

summary judgment.[13] See FED. R. CIV. P. 56(d) (requiring nonmoving party to show by affidavit why it cannot present facts necessary to oppose the motion).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and counsel for defendants.

ENTER: This 20th day of October, 2011.

                                                                /s/ Glen Conrad
                                                Chief United States District Judge

---

[13] The court also finds no respect in which any additional discovery responses are warranted. Desper's first motion to compel seeks additional responses to certain interrogatories, which are argumentative, rather than seeking discoverable information, or which relate to claims that the court has summarily dismissed under § 1915A.
    Desper's other motion asks for production of the prerecorded church service that MRRJ played in his pod, as proof that the service was Amish Mennonite, rather than nondenominational, as defendants claimed. Because Desper fails to allege any facts in dispute of defendants' evidence that he was not forced to watch the televised religious service, however, the religious views expressed on the video are not relevant to the court's determination that defendants are entitled to summary judgment as to Desper's religious rights claims.

17